# Supreme Court of Texas

### No. 22-0313

Pecos County Appraisal District and
Kinder Morgan Production Company, LLC,

*Petitioners*,

v.

Iraan-Sheffield Independent School District,

*Respondent*

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

**Argued February 2, 2023**

JUSTICE BLACKLOCK delivered the opinion of the Court.

JUSTICE BLAND did not participate in the decision.

"Taxation shall be equal and uniform." TEX. CONST. art. VIII, § 1(a). Taxable property "shall be taxed in proportion to its value, which shall be ascertained as may be provided by law." *Id*. § 1(b). In furtherance of these constitutional commands, the Legislature has "provided by law" a detailed and comprehensive statutory regime governing the ascertainment of the value of taxable property. The

centerpieces of that regime are the appraisal districts, which are "established in each county" and "responsible for appraising property" for taxation based on neutral principles of property valuation. TEX. TAX CODE §§ 6.01(a), (b); 23.01(a), (b), (f), (h); 23.0101–.013.

Appraisal districts may employ outside firms to assist with appraisals, but they may not pay such firms a fee that "is contingent on the amount of or increase in appraised, assessed, or taxable value of property appraised." *Id.* § 25.01(b). In this way, and in others as well, the Legislature has taken steps to insulate the appraisal process from the "pernicious incentives to maximize recovery" that are created when the personal income of those in a position to influence our tax system is linked to higher taxation. *Kinder Morgan SACROC, LP v. Scurry County*, 622 S.W.3d 835, 843 (Tex. 2021).

Today's case asks whether a school district may retain a lawyer on a contingent-fee basis to prosecute litigation designed to increase the appraised value of property so as to generate more tax receipts for the school district. We conclude that no statute expressly authorizes a school district to do so. We further conclude that authority for such an arrangement cannot be implied from a school district's express authority to bring litigation regarding appraisals.

A political subdivision's general authority to bring litigation and to hire lawyers may in some instances entail the implied power to pay those lawyers a contingent fee. Implying such a power in the tax-appraisal context, however, would be inconsistent with the comprehensive statutory framework governing property taxation, which vests appraisal districts with the responsibility to neutrally appraise

2

property and guards against personal financial incentives to maximize appraised values. The law has long acknowledged that contingent-fee arrangements creating a personal profit motive to maximize taxation may be "unfair and unjust to the public." *White v. McGill*, 114 S.W.2d 860, 863 (Tex. 1938). The Legislature has expressly authorized such arrangements only for the collection of delinquent taxes that have already been imposed but remain unpaid. TEX. TAX CODE § 6.30. It has not done so with respect to litigation seeking to increase appraisal values, and we find no valid basis on which to imply such authority.

Because the school district in this case lacked legal authority to engage its attorney on a contingent-fee basis to bring this appraisal litigation, the district court correctly granted the defendants' Rule 12 motion challenging the attorney's authority to represent the school district. However, dismissal of the school district's case with prejudice was not the proper remedy under Rule 12. The school district must be afforded the opportunity to adjust its contract with its attorney or to substitute other counsel if it wishes to continue prosecuting this lawsuit. The case is remanded to the district court for that purpose.

## I.

Iraan-Sheffield ISD, located in Pecos County, employed attorney D. Brent Lemon to pursue claims regarding the Pecos County Appraisal District's allegedly inaccurate valuation of Kinder Morgan's mineral interests. The school district's contract with Mr. Lemon promises to compensate him as follows:

> Twenty percent (20%) of all total and gross payments, funds, compensation, or value (including agreement for future payments) received by Clients from any source

3

related to or paid on behalf of Kinder Morgan, Inc., its predecessors, affiliates, or subsidiaries related in any way to the Claim.

Consultants retained by Mr. Lemon criticized the Appraisal District's valuation of Kinder Morgan's property as far too low. Lemon demanded the Appraisal District reappraise the properties, but the Appraisal District declined. On the school district's behalf, Lemon challenged the appraisal before the Appraisal Review Board pursuant to section 41.03 of the Tax Code.

Section 41.03 authorizes appraisal challenges by taxing units only on certain enumerated grounds, one of which is "an exclusion of property from the appraisal records." *Id.* § 41.03(a)(1). The school district's challenge to Kinder Morgan's appraisal relied on this provision, which on its face applies only to challenges to the "exclusion of property" from appraisal, not challenges to the *amount* of an appraisal. The parties argued below, and to some extent continue to argue in this Court, over whether section 41.03(a)(1) authorizes the school district's challenge. This merits question is not properly before us in this appeal from a dismissal under Texas Rule of Civil Procedure 12. We therefore do not resolve it.[1]

---

[1] The school district cites our decision in *Kinder Morgan SACROC*, a related case, to support its contention that property should be considered "excluded" from the appraisal records and therefore subject to challenge under section 41.03(a)(1) if an appraisal is erroneously low because of taxpayer fraud. In *Kinder Morgan SACROC*, we observed that section 41.03(a)(1) "has been construed" as providing "a remedy for an erroneous appraisal based on property that escaped taxation because of a void assessment arising from taxpayer fraud." 622 S.W.3d at 845 (quoting *Willacy Cnty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 50 (Tex. 2018)). Of course,

4

The Appraisal Review Board denied the school district's challenge. The school district appealed that decision to district court, as permitted by section 42.031(a) of the Tax Code. It named Kinder Morgan and the Appraisal District as defendants.[2] When Kinder Morgan asked Mr. Lemon to identify the source of his authority to represent the school district, he provided the above-quoted contract.

Kinder Morgan then filed a motion under Rule 12 alleging that Mr. Lemon lacks authority to represent the school district because the school district has no power to hire attorneys on a contingent-fee basis for this appraisal litigation. The motion also asked the court to strike the school district's pleadings. Kinder Morgan simultaneously filed a plea to the jurisdiction, arguing that if the pleadings were struck as

observing in passing that a statute "has been construed" a certain way is hardly a precedential holding that it must be so construed. *Kinder Morgan SACROC* quoted a passage from our decision in *Willacy County*, but that passage addressed a different provision of the Tax Code, section 25.21. Amicus curiae Texas Taxpayers and Research Association argues that the school district cannot attack the appraisal of Kinder Morgan's property by claiming that property was "excluded" from the tax roll when in fact "Kinder Morgan's property was appraised by the chief appraiser as required by law and placed on the tax roll." Amicus curiae Texas Oil and Gas Association similarly argues that section 41.03(a) is inapplicable because "it is undisputed that Kinder Morgan's property was in fact included in the Pecos County appraisal records and appraised and taxed during each and every one of the disputed years." The petitioners themselves do not directly present this merits argument for our consideration, and they likely could not have done so given the procedural posture—an appeal from a non-merits dismissal under Rule 12. We consider the question open for further litigation.

[2] *See* TEX. TAX CODE § 42.21(b) (stating that an appeal to district court "must be brought against the appraisal district and against the owner of the property involved in the appeal"). The defendants filed joint briefs in this Court, and this opinion often refers collectively to the defendants as "Kinder Morgan."

requested, the time for filing the appeal in district court had expired and the court therefore lacked jurisdiction.[3] Among other arguments, the school district responded that section 6.30(c) of the Tax Code authorized Mr. Lemon's representation. The district court agreed with Kinder Morgan. It struck the school district's pleadings and rendered judgment dismissing the suit with prejudice.

The court of appeals reversed. 645 S.W.3d 827, 843 (Tex. App.—El Paso 2022). It concluded that section 6.30(c) of the Tax Code authorizes the contingent-fee arrangement between Mr. Lemon and the school district. *Id.* at 840–41.

## II.

Kinder Morgan refers to Mr. Lemon as a "tax ferret."[4] Not to be outdone, Lemon calls Kinder Morgan a "tax cheat" and "the progeny of Enron." Name-calling aside, this case does not turn on whether it is accurate to call Lemon's agreement with the school district a "tax ferret contract." This colorful terminology does not aid our review of the legal questions presented, which turn primarily on the relevant provisions of the Tax Code, none of which use mammalian metaphors.

---

[3] *See* TEX. TAX CODE § 42.21(a) (providing a 60-day deadline for filing an appeal in district court).

[4] "A 'tax ferret contract' has been defined as an agreement to locate property that has been omitted from the tax rolls." *Kinder Morgan SACROC,* 622 S.W.3d at 843. Kinder Morgan wields the term "tax ferret" as a condemnation. Mr. Lemon is eager to assure us that he is no such thing. We assume the parties mean no disrespect to the furry mammal itself, a beloved pet of Queen Elizabeth I, celebrated annually on National Ferret Day, April 2.

**A.**

Any action of a political subdivision, including a school district, "must be grounded ultimately in the constitution or statutes." *Guynes v. Galveston County*, 861 S.W.2d 861, 863 (Tex. 1993). Political subdivisions "possess only such powers and privileges as have been expressly or impliedly conferred upon them." *Wasson Ints., Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 430 (Tex. 2016) (quoting *Payne v. Massey*, 196 S.W.2d 493, 495 (Tex. 1946)). While a political subdivision's express authorities are those that appear expressly in the Constitution or statutes, its implied authorities are only those that are "reasonably necessary to make effective" the expressly granted powers. *State v. Hollins*, 620 S.W.3d 400, 406 n.28 (Tex. 2020) (quoting *Tri-City Fresh Water Supply Dist. No. 2 v. Mann*, 142 S.W.2d 945, 947 (Tex. 1940)). Authority will not be implied lightly. We have explained that the "reasonably necessary to make effective" standard encompasses those powers that are "indispensable" or "essential" to the exercise of expressly granted powers. *Id.* at 406 (quoting *Foster v. City of Waco*, 255 S.W. 1104, 1105–06 (Tex. 1923)). Any reasonable doubt concerning the existence of an implied power is resolved against the political subdivision. *Id.* (quoting *Foster*, 255 S.W. at 1106).

The school district first contends that section 6.30(c) of the Tax Code expressly authorizes Mr. Lemon's contingent-fee agreement. Section 6.30(c) states:

> The governing body of a taxing unit may contract with any competent attorney to represent the unit to enforce the collection of delinquent taxes. The attorney's compensation is set in the contract, but the total amount of

7

> compensation provided may not exceed 20 percent of the amount of delinquent tax, penalty, and interest collected.

The court of appeals held that this statute authorizes the school district to retain Lemon on a contingent-fee basis to bring this litigation. 645 S.W.3d at 841. We disagree.

As always, our analysis of the statute "begins with the statutory text." *In re Geomet Recycling LLC*, 578 S.W.3d 82, 86 (Tex. 2019). Section 6.30(c)'s authorization of a 20 percent contingency fee applies only to attorneys hired "to enforce the collection of delinquent taxes." The parties agree that whether section 6.30(c) applies turns on whether the school district's suit is "to enforce the collection of delinquent taxes." It is not, for multiple reasons.

First and foremost, the additional taxes the school district hopes Kinder Morgan will be required to pay are in no sense "delinquent," as the Tax Code consistently uses that term. The school district contends that it is accurate to call the taxes at issue "delinquent" because, absent Kinder Morgan's alleged fraud, the taxes rightly were owed in previous years and are therefore "delinquent" in the sense that they were not paid when they should have been owed. But the Tax Code does not use the labels "delinquent" or "delinquency" casually or colloquially. These are carefully defined terms of art, and various legal consequences attach when unpaid taxes become correctly described as "delinquent." *See, e.g.*, TEX. TAX CODE §§ 33.01, .07.

The Tax Code leaves little doubt about when taxes become "delinquent," and its conception of delinquency differs from the school district's. Section 31.02(a) states that "taxes are due on receipt of the tax bill and are delinquent if not paid before February 1 of the year

8

following the year in which imposed." Section 31.04 contains additional provisions used to determine when unpaid taxes become "delinquent" in various circumstances, none of which applies here.

In the scenario before us, there have been no taxes "imposed" based on the heightened valuation the school district desires, so there are no "delinquent taxes" to collect. This lawsuit seeks to require the Appraisal District to raise its valuation of Kinder Morgan's property so that Kinder Morgan will owe additional taxes, which have not yet been imposed. The school district anticipates that success in this suit would yield an increased appraisal, which would require the assessment of additional taxes against Kinder Morgan, which could then be collected. If "not paid before February 1 of the year following the year in which imposed," such taxes would generally be "delinquent." *Id.* § 31.02(a). But the taxes at issue in this litigation have yet to be assessed or imposed. They cannot possibly be "delinquent."[5]

The school district cannot be right about the authority granted to it by section 6.30(c) unless "delinquent" means one thing in that section and an altogether different thing everywhere else in the Tax Code. But it is well settled that "when feasible, we should consistently interpret terms used throughout a statute." *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 321 (Tex. 2002). The need for consistent and predictable

---

[5] *See, e.g.*, *In re ExxonMobil Corp.*, 153 S.W.3d 605, 609 (Tex. App.—Amarillo 2004, orig. proceeding) (holding that a suit by a taxing unit asserting that taxpayers' fraudulent conduct resulted in the undervaluation of their mineral interests was not a suit "to collect delinquent taxes" because there was "no allegation the defendants failed to pay the taxes assessed them with respect to the oil interests").

9

interpretation of the term "delinquent" or "delinquency" throughout the Tax Code is particularly acute given the severe consequences that can follow when unpaid taxes become "delinquent."[6] Nothing in the Tax Code's interrelated provisions governing property taxes indicates that "delinquent" has a different meaning in section 6.30(c) than it does elsewhere in the Code.

Aside from the problem with the school district's idiosyncratic conception of the word "delinquent," the school district's position does not adequately account for section 6.30(c)'s use of the words "enforce" and "collection." There can be no "collection" of the taxes at issue here because those taxes have not been assessed. Likewise, there can be no "enforcement" of a payment obligation that has not yet arisen. The school district's suit seeks to bring about the assessment of additional taxes against Kinder Morgan, taxes that could then be collected. If taxes imposed on Kinder Morgan remained uncollected past their delinquency date, the school district could then consider its options "to enforce the collection of delinquent taxes," which include the contingent-fee arrangements authorized by section 6.30(c). But that is not what is happening in this case. There is no sense in which the suit before us—which seeks to increase the appraised value of Kinder Morgan's property—is a suit "to enforce the collection of delinquent taxes" as the Tax Code uses that phrase.

---

[6] Possible consequences include monetary penalties and seizure of property. *See, e.g.*, TEX. TAX. CODE §§ 33.01, .07, .21, .22, .41, .53, .91, .911.

10

**B.**

Because nothing in the Tax Code itself indicates that the power to hire attorneys "to enforce the collection of delinquent taxes" includes the power to hire attorneys to advocate for increased appraisal values, the school district supports its reading of the Code primarily by pointing to this Court's prior decisions. Its appeals to precedent, however, are unconvincing. The school district first relies on *Willacy County Appraisal District v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29 (Tex. 2018), for the proposition that tax liability arises from property ownership, not from receipt of a tax bill. *Willacy County* indeed supports that proposition, but the proposition does not help the school district.

As we observed in *Willacy County*, under section 31.02 of the Tax Code, "[t]axes are due upon receipt of the tax bill, but delinquency is not dependent on such receipt. Rather, taxes 'are delinquent if not paid before February 1 of the year following the year in which imposed.'" 555 S.W.3d at 44 (quoting TEX. TAX CODE § 31.02(a)). The school district is therefore correct that Kinder Morgan's having not received a tax bill does not determine whether the taxes at issue are "delinquent." But as section 31.02 makes clear—and as we said in the very next sentence in *Willacy County*—taxes do not become "delinquent" until some time after they have been "imposed." The taxes the school district hopes will be imposed on Kinder Morgan have not yet been imposed, so there can be no delinquency within the meaning of section 31.02. Nothing in *Willacy County* says otherwise.

The school district relies most heavily on *White v. McGill*, 114 S.W.2d 860 (Tex. 1938). The court of appeals did the same. 645 S.W.3d

11

at 833–34, 839–40. In the court of appeals' view, *White* required it to adopt a "non-technical" understanding of section 6.30(c)'s use of the term "delinquent taxes," under which the term encompasses the as-yet-unassessed taxes at issue here. In *White*, this Court considered the legality of a "tax ferret contract" with non-attorneys who were paid a contingent fee for recovery of taxes on property not yet on the tax rolls. A predecessor statute to section 6.30(c), in effect at the time, provided as follows:

> Section 1. No contract shall be made or entered into by the Commissioners' Court in connection with the collection of delinquent taxes where the compensation under such contract is more than fifteen per cent of the amount collected. Said contract must be approved by both the Comptroller and the Attorney General of the State of Texas, both as to substance and form. Provided however the County or District Attorney shall not receive any compensation for any services he may render in connection with the performance of the contract or the taxes collected thereunder.

TEX. REV. CIV. STAT. art. 7335a (Act of Feb. 17, 1930, 41st Leg., 4th C.S., ch. 8, 1930 Tex. Gen. Laws 9, 9, *repealed by* Act of May 26, 1979, 66th Leg., ch. 841, § 6(a)(1), 1979 Tex. Gen. Laws 2217, 2329).

Although the contract at issue in *White* contemplated the collection of taxes not yet imposed (and therefore not "delinquent" in the modern Tax Code sense), this Court held that the statute nevertheless applied to the contract. The Court concluded, essentially, that the term "delinquent taxes" as used in article 7335a could include taxes not yet imposed, reasoning that "we do not think the Legislature used the words 'delinquent taxes' in a technical sense." 114 S.W.2d at 863. Other considerations also influenced the Court's reasoning in *White*, but the

school district focuses our attention on *White*'s statement that the Legislature did not use "delinquent taxes" in a "technical sense." The school district extrapolates from this statement a requirement that the term "delinquent taxes" must likewise be given a "non-technical sense" in section 6.30(c), a successor statute to article 7335a regarding the authority of taxing units to hire agents using contingent fees.

If the reasoning of *White* indeed controlled our interpretation of section 6.30(c), as the court of appeals thought, then we might agree with the court of appeals' conclusion as a matter of precedent, despite the textual problems with this view of the statute. But *White* interpreted a different statute than the one at issue here, and it did so long before the Legislature enacted the modern Tax Code. *White* is not binding precedent on the interpretation of section 6.30(c), which differs from the statute *White* considered and is situated within a comprehensive statutory scheme that did not exist when *White* was decided.

To begin with, section 6.30(c) differs materially from the statute at issue in *White* in a way that has nothing to do with the disputed word "delinquent." The prior statute broadly covered all contracts "in connection with" the collection of delinquent taxes, while the current statute is limited to contracts "to enforce" the collection of delinquent taxes. This change in phrasing between the prior statute and the one in effect today suggests a deliberate constriction of the statute's scope. While the prior statute analyzed in *White* applied to *any* contract "in connection with" the collection of delinquent taxes, today's statute now specifies only a single "connection." In order for section 6.30(c) to apply,

the contract must be "to enforce" the collection of delinquent taxes. No other contract "in connection with" the collection of delinquent taxes is within the scope of section 6.30(c). Of course, in order to be "enforced"—rather than imposed in the first place—tax obligations must already exist, which distinguishes the scenario envisioned by section 6.30(c) from the school district's position. Thus, quite apart from the parties' focus on the word "delinquent," the statutory text has been adjusted since *White* in a way that restricts its authorization of contingent fees to the enforcement of existing tax obligations. There is no sense in which the school district's litigation against Kinder Morgan fits that description.

*White* must also be placed in its historical and legal context. It was decided "long before the Tax Code was enacted in 1979." *Kinder Morgan SACROC*, 622 S.W.3d at 843.[7] In the years since *White*, the Legislature decided to place today's version of section 6.30(c) within the

---

[7] The modern "Property Tax Code," which is Title I of the Tax Code, created a comprehensive regulatory scheme designed in part to yield more fair and uniform property valuations. It abolished the appraisal authority of taxing units and established a centralized appraisal district for each county. *See Jim Wells County v. El Paso Prod. Oil & Gas Co.*, 189 S.W.3d 861, 871 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); WILLIAM D. ELLIOT & J. SCOTT MORRIS, ELLIOT & MORRIS' TEXAS TAX CODE ANNOTATED § 1.01 commentary; TEX. PROP. CODE §§ 6.01, .05. Appraisal review boards were created to hear taxpayer and taxing unit complaints, with certain appeal rights to the courts. ELLIOT & MORRIS, *supra*, § 1.01 commentary; TEX. PROP. CODE §§ 6.41; 41.01, .03; 42.01, .031. The appraisal district was charged with the exclusive responsibility for appraising property in the district. Taxing units were pushed out of the appraisal process altogether, except for a limited right to contest appraisals before the appraisal review board and to appeal those decisions to district court. *Jim Wells County*, 189 S.W.3d at 871; ELLIOT & MORRIS, *supra*, § 1.01 commentary; *see* TEX. PROP. CODE §§ 6.01, .05; 41.03; 42.031.

14

comprehensive and interrelated statutory framework that is Title I of the Tax Code, also known as the Property Tax Code. Act of May 26, 1979, 66th Leg., R.S., ch. 841, § 1, sec. 6.30, 1979 Tex. Gen. Laws 2217, 2231. Even if *White* were correct that the Legislature did not use the word "delinquent" in a "technical sense" in article 7335a—a defunct statute that resembles but differs from section 6.30(c)—this historical observation does not authorize us to interpret the word "delinquent" in the modern Tax Code in a way that is out of step with the word's precise and consistent meaning throughout the Code. If the Legislature actually sought to preserve *White*'s "non-technical" understanding of "delinquent taxes" in the limited realm of contingent-fee contracts, it certainly could have said so. Instead, it generated the opposite result by incorporating the amended, modern version of section 6.30(c)—and its reference to "delinquent taxes"—into a comprehensive Code that contains a clear and consistent understanding of the words "delinquent taxes." *White* does not authorize courts to give section 6.30(c)'s use of "delinquent taxes" a different meaning than those words have elsewhere in the Code, and the court of appeals erred by holding otherwise.

For these reasons, we agree with Kinder Morgan that section 6.30(c) did not authorize the school district to retain Mr. Lemon on a contingent-fee basis. Section 6.30(c) authorizes contingent-fee contracts only "to enforce the collection of delinquent taxes," which means taxes that have already been imposed and have become delinquent as the Tax Code uses that term. *See* TEX. TAX CODE § 31.02.

Finally, the school district also relies on section 45.231(a) of the Education Code, which provides: "The board of trustees of an

15

independent school district may employ a person to assess or collect the school district's taxes and may compensate the person as the board of trustees considers appropriate."[8] Just as the school district's retention of Mr. Lemon is not "to enforce the collection of delinquent taxes," it is also not "to assess or collect the school district's taxes." This lawsuit—and the administrative challenge underlying it—seeks to increase Kinder Morgan's appraisals so as to impose additional taxes on Kinder Morgan. The "assessment" and "collection" of these taxes are later stages of the process, which can only take place if the appraisals are in fact increased. *See generally id.* §§ 26.01–.18, 31.01–.12. Because there is no sense in which Mr. Lemon's actions in this case amount to the assessment or collection of taxes, his authority to represent the school district in this litigation cannot be found in section 45.321(a) of the Education Code.

## C.

The school district points to no other statute that might explicitly authorize it to engage Mr. Lemon on a contingent-fee basis for this litigation. This brings us to the question of whether the school district's authority for its arrangement with Mr. Lemon arises impliedly from one of the district's expressly granted powers. As explained above, implied authority should be found only when it is "indispensable to the declared objects of the corporation and the accomplishment of the purposes of its creation." *Tri-City,* 142 S.W.2d at 947.

---

[8] Section 11.1511(c)(3) of the Education Code similarly empowers a school board to "employ a person to assess or collect the district's taxes as authorized under Section 45.231."

16

Kinder Morgan does not dispute that the express authority to bring litigation necessarily entails implied authority to hire attorneys to do so. Whether the general power of a governmental unit to hire attorneys for litigation includes the power to pay them contingent fees in other contexts—such as tort actions—is not a question we consider here. Instead, the narrow question before us is whether, in the particular context of appraisal litigation, the express authority of a taxing unit to challenge appraisals necessarily entails implied authority to hire attorneys on a contingent-fee basis, an arrangement which gives the attorneys a personal financial incentive to maximize appraisal values. We conclude that no such authority can be implied from the relevant statutes.

Both the Legislature and this Court have long been cognizant that the government's use of contingent-fee agreements in the taxation context can be "unfair and unjust to the public." *White*, 114 S.W.2d at 863. This "evil," as we called it in 1938, motivated the Legislature to enact article 7335a, the statute at issue in *White*, which authorized some contingent-fee agreements with a 15 percent cap and required approval by the Attorney General and the Comptroller. TEX. REV. CIV. STAT. art. 7335a (repealed 1979). Section 6.30(c), the amended successor statute to article 7335a, likewise authorizes contingent-fee contracts in discrete circumstances and limits the fee's percentage. TEX. TAX CODE § 6.30(c). Moreover, because of Texas law's longstanding skepticism and close regulation of such arrangements in the taxation context, the Attorney General in 2000 issued an opinion concluding that a taxing unit has

17

neither express nor implied authority to enter such contracts. Tex. Att'y Gen. Op. No. JC-0290 (2000).

Undergirding any statute or judicial opinion regarding taxation is the Texas Constitution's requirement that "[t]axation shall be equal and uniform." TEX. CONST. art. VIII, § 1(a). In light of that foundational promise, we cannot lightly disregard legitimate concerns—which have a lengthy pedigree in Texas law—that contingent-fee contracts such as this one create "incentives to maximize recovery in ways that may be abusive, coercive, or harassing." *Kinder Morgan SACROC*, 622 S.W.3d at 843.

The Tax Code does not mention contracts such as Mr. Lemon's specifically, but the Code is elsewhere keenly concerned to guard against similar incentives to maximize appraisals. Section 25.01(b) of the Tax Code prohibits appraisal districts from hiring outside firms on a contingent-fee basis. The obvious aim of such a prohibition is to protect taxpayers from those with a personal financial incentive to raise appraisals as high as possible. The statutes governing appraisals guard against improper incentives in other ways, as well. For example, most employees of taxing units within an appraisal district are ineligible to serve on the board of the district. TEX. TAX CODE § 6.03(a). And the compensation of an appraisal district's chief appraiser cannot be linked to an increase in appraised values. *Id*. § 6.05(d).

We must consider the school district's claim to implied authority against the backdrop of these related statutory provisions and in light of the well-recognized concerns that accompany contingent-fee agreements in the taxation context. The Legislature's response to those

18

concerns, thus far, has been to authorize taxing units to use contingent-fee agreements related to taxation in only one specific circumstance—to "enforce the collection of delinquent taxes." *Id.* § 6.30(c).

With this legal background in mind, the question is whether the Legislature's *silence* as to contracts like Mr. Lemon's is better understood as (1) implying that such contracts are authorized, or (2) withholding authorization. The second is far more likely. The best inference from the Legislature's silence is that the law-making branch has not authorized taxing units to pursue appraisal litigation by engaging attorneys on a contingent-fee basis—not that the Legislature has impliedly authorized such controversial contracts without saying so. *See., e.g., Hollins*, 620 S.W.3d at 408 (given the law's longstanding concern with regulating ballot security, "the only fair inference from the Code's express recognition of private distribution of ballot applications and its silence on any official distribution is that the latter is unauthorized").

The school district contends that requiring Kinder Morgan to pay the taxes it rightfully should owe—which is what the school district believes Mr. Lemon's representation does—would best promote equality and uniformity in taxation. Kinder Morgan disagrees, of course. It contends that equality and uniformity of taxation are diminished when attorneys are given a personal financial incentive to maximize appraisal values. The Constitution charges the Legislature with making such determinations. The Legislature's duty is to "provide[] by law" for the "equal and uniform" ascertainment of the value of taxable property.

19

TEX. CONST. art. VIII, § 1(a), (b). In so doing, the Legislature has neither explicitly nor impliedly authorized taxing units to pay contingent fees to attorneys to pursue either administrative appraisal challenges or appraisal litigation. We therefore hold that the school district lacks authority to retain Mr. Lemon for this litigation on a contingent-fee basis.

## III.

Although we agree with Kinder Morgan that Texas law does not authorize the school district to retain Mr. Lemon on a contingent-fee basis, we must also consider whether Kinder Morgan's Rule 12 motion properly challenged Lemon's authority and whether the appropriate relief under Rule 12 was to dismiss the school district's case with prejudice. As explained below, we conclude that Rule 12 allows for challenges to contingent-fee contracts of this nature but that the school district's claims should not have been dismissed with prejudice.

Rule 12 provides:

> A party in a suit or proceeding pending in a court of this state may, by sworn written motion stating that he believes the suit or proceeding is being prosecuted or defended without authority, cause the attorney to be cited to appear before the court and show his authority to act. The notice of the motion shall be served upon the challenged attorney at least ten days before the hearing on the motion. At the hearing on the motion, the burden of proof shall be upon the challenged attorney to show sufficient authority to prosecute or defend the suit on behalf of the other party. Upon his failure to show such authority, the court shall refuse to permit the attorney to appear in the cause, and shall strike the pleadings if no person who is authorized to prosecute or defend appears. The motion may be heard and determined at any time before the parties have announced

20

ready for trial, but the trial shall not be unnecessarily continued or delayed for the hearing.

TEX. R. CIV. P. 12.

The school district contends that its alleged lack of authority to pay Mr. Lemon a contingent fee is immaterial to Lemon's authority to represent the district. The school district points to testimony from its superintendent indicating that the school district in fact authorized Lemon to represent it in court. It views this factual authorization as the only thing required by Rule 12. We disagree.

Rule 12 may be used both "to prevent an attorney from purporting to represent a client when the client has not authorized that representation" and also "to question whether a party has the power or authority to hire an attorney." *Gulf Reg'l Educ. Television Affiliates v. Univ. of Hous.*, 746 S.W.2d 803, 809 (Tex. App.—Houston [14th Dist.] 1988, writ denied). In either situation—whether the defect in authority is factual or legal—the "proceeding is being prosecuted or defended without authority" if the challenged attorney cannot "show his authority to act." TEX. R. CIV. P. 12.

Because the school district is a political subdivision with only those powers assigned to it by the Legislature, the intent of its officers to take an action does not mean the action has the intended legal effect. This is because an *ultra vires* action outside the authority of a political subdivision is void and therefore has no legal consequence. *See Chambers–Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 348–55 (Tex. 2019); *see also City of Arlington v. Lillard*, 294 S.W. 829, 830 (Tex. 1927). Thus, the school district does not actually vest an attorney with the "authority to act," as contemplated by Rule 12, if the

21

means by which it attempts to do so are beyond its power. If the school district lacks the power to retain attorneys on a contingent-fee basis to pursue appraisal litigation, as we hold above, then Mr. Lemon cannot show his authority to represent the school district in this lawsuit by pointing to his contingent-fee contract, which was an *ultra vires* act beyond the school district's authority.

Nor can the contingent-fee provision of the contract be separated from the contract's other provisions authorizing Mr. Lemon to represent the school district in court. If the Legislature's choice not to authorize contingent-fee contracts in appraisal litigation brought by taxing units is to have any practical effect, it must at least mean that an attorney retained by a taxing unit under such a contract cannot proceed any further once the existence of an *ultra vires* contingent-fee agreement is established. Outside of tax litigation, it may not always be the case that questions about the way a governmental client has chosen to pay its attorney implicate the attorney's "authority to act" as contemplated by Rule 12. We are mindful of the potential that Rule 12 may be abused, and we have previously cautioned that attorney disqualification is a severe remedy that "can result in immediate and palpable harm, disrupt trial court proceedings, and deprive a party of the right to have counsel of choice." *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002).

As explained above, however, both the Judiciary and the Legislature of our State have long been concerned with the *way* attorneys or other agents of the government are paid in the taxation context. The issue here is not a technical or procedural defect in the school district's hiring of Mr. Lemon. To the contrary, legal limitations

on the authority of taxing units to give their hired agents a financial incentive to maximize taxation exist to protect the substantive rights of taxpayers. Contracts executed in violation of these limitations cannot be minimized as mere paperwork errors or excused as immaterial to the attorney's authority to prosecute the litigation. In these circumstances, we hold that a Rule 12 motion challenging an attorney's authority to represent a taxing unit on a contingent-fee basis is a proper way for a taxpayer to insist that taxing units pursue increased taxation only by lawful means.[9]

Finally, although we agree with the district court that Mr. Lemon failed to show his authority under Rule 12, the proper remedy was not dismissal with prejudice of the school district's claims. Rule 12 states its remedy. The Court "shall refuse to permit the attorney to appear in the cause, and shall strike the pleadings if no person who is authorized to prosecute or defend appears." The district court properly applied the first part of this remedy by refusing further appearance by Mr. Lemon under his contingent-fee contract. But the district court also struck the school district's pleadings, a sanction only available "if no person who is authorized to prosecute or defend appears." We see no indication in the record—and Kinder Morgan does not contend—that the school district was afforded a reasonable opportunity to hire another attorney or to adjust its arrangement with Mr. Lemon, either of which would have cured the problem identified by the Rule 12 motion.

---

[9] We find no support in the record for the school district's complaints regarding the notice or timing of the Rule 12 hearing in the district court.

23

As we recently observed in related litigation, "[w]hile Rule 12 requires the trial court to dismiss counsel who fails to show authority to prosecute or defend the proceeding, pleadings filed by any such counsel are not nullified and may only be stricken 'if no person who is authorized to prosecute or defend appears.'" *Kinder Morgan SACROC*, 622 S.W.3d at 846. The leniency and flexibility of this remedy recognizes that claims and defenses in litigation belong to the parties, not their lawyers. Here, the Legislature has given the school district the right to pursue administrative appraisal challenges and appraisal litigation. *See* TEX. TAX CODE §§ 41.03, 42.031. The school district may continue to exercise that right if it so chooses, but it must do so through attorneys hired on terms that are within its statutory authority.[10]

## IV.

Although we disagree with the court of appeals' holding that the law authorizes the school district's contingent-fee contract with Mr. Lemon, we nevertheless affirm the court of appeals' judgment insofar as it reverses the dismissal with prejudice of the school district's claims. The case is remanded to the district court for further proceedings consistent with this opinion. On remand, the school district must be given a reasonable opportunity either to modify its agreement with Mr. Lemon or to retain other counsel on terms that are within its lawful authority.

---

[10] The parties agree that the contingent-fee contract at issue is not subject to sections 2254.1036 and 2254.1038 of the Government Code, enacted in 2019. Act of May 21, 2019, 86th Leg., R.S., ch. 857, § 4, 2019 Tex. Gen. Laws 2321, 2322–23. We express no opinion on the effect of these recently enacted provisions on the questions addressed in this opinion.

                                                    _____

James D. Blacklock
Justice

**OPINION DELIVERED:** May 19, 2023